A total of six cases before the court today, the last two of which are submitted on the briefs. The four that are argued include three appeals from the Patent, Trial, and Appeal Board arising out of IPRs and one appeal from the Court of Veterans Claims. We're going to hear the first three cases first, and then we're going to take a break for a personnel change among the judicial officers. So we will move forward with the appeals from the Patent, Trial, and Appeal Board. The first case before the court is case number 151934, VernetX Inc. v. Apple Inc. Now you're going to have to help me with pronouncing your name. Mr. Tamafia, do you want three minutes for rebuttal? Okay, you may proceed. Go ahead. Your Honor, and may it please the Court, in the decision below, the Board committed two fundamental errors. First, the Board evaluated complex prior art without any supporting expert evidence, and it's resulting in validity findings premised on unsupported assumptions. Second, the Board adopted claim constructions that are contrary to the specification and that ignore VernetX's disclaimer that Apple itself considered was unambiguous. As to the first issue, this Court has held that the Board may not substitute its expertise for evidence in the record. Let me ask you a question. From 36 to 48 of your opening brief, you argue extensively that secure communications linked in Claims 1 and 16 requires encryption. That is correct, Your Honor. In Appeal 1489, which is a related case here today, you took a different position on a related peg. On page 23 in your brief in that appeal, you argue, and I'm quoting, encryption is just one way of achieving data security. Is that reconcilable? Your Honor, it is reconcilable, and also my colleague will be able to address it a little bit more in the context of that appeal. But, in this specification, the concept of security and whether encryption is required differs based on the context. For instance, and this was in the court's Cisco opinion, if in the context of private networks, sufficient security can be ensured through, for instance, physical security. But in the context of unsecure pathways over the networks, which is what's at issue here for the construction of a secure communication link, encryption is required because both the specification and also the prosecution disclaimer, to which I'll get, demonstrate that only encryption is able to provide the requisite security over those unsecure pathways. And so, with respect to the specification, in our briefs we demonstrated how the specification provides numerous examples of why encryption is required and why encryption is the only method of ensuring, in the context of unsecure pathways, the requisite data security. One of the points you make is that you disclaim unencrypted secure communications during the ongoing re-examination and that PTAB failed to account for that when they were discussing the prosecution history. But, in Phillips, we said that a patent's prosecution history consists of a complete record. How can we determine that your statement reflects the complete record if the proceeding is ongoing? Your Honor, the proceeding was ongoing at the time, but what this court has said is that the prosecution, what's important for the prosecution history, is whether or not it is unambiguous and whether it was understood as such by everyone else. Could it have been changed? I'm sorry, Your Honor? When it was ongoing, could you have changed your position? We could have changed the position, but we actually did not change the position because, and the reason we know that, because Apple insisted and invoked a disclaimer in a subsequent and a parallel district court litigation, successfully. And even in the proceeding before the board, this is an Apple's petition of note, too, Apple actually did acknowledge that we have disclaimed in the prior proceeding all unencrypted embodiments. So the objective record, I mean, Your Honor, I understand your concern. There may be cases where proceeding, contemporaneous proceeding, is still ongoing and subsequent changes may occur, but this is not such a case. There is no dispute between the parties. And where do they concede that? This is, Your Honor, this is going to be, this is on page appendix 284 and note 2, and this was Apple's petition in the 237 IPR. And so what Apple said is Apple said that even the grandparent of the present patent. I see it. Yeah, Your Honor, right. So that's the language. And so our position is that this is, this is really a case, I mean, this court said what's important is whether the disclaimer is unambiguous. And here, this is a clear case where the, not only did we actually unambiguously disclaimed if the court looks at the language of a disclaimer, but actually Apple itself has conceded and argued before both the board in this proceeding, but also in the district court successfully, that there was such a disclaimer by Vernetics. So the objective evidence that this court said what's important is whether or not everyone else, particularly the patent owners' competitors, understood the disclaimer to be unambiguous. This is just a Dairy Star case. Apple did rely on this disclaimer at the district court, but, and that certainly is telling. Are you, you're not arguing though that there is some kind of judicial estoppel here? No, Your Honor, we're not arguing judicial estoppel. We are arguing that this is a straightforward case of where this court applies to the traditional principles of claim construction. And so part of a claim construction is consultation of the, the, the intrinsic record, which consists of a prosecution of history. But, but you argued against that reliance on that disclaimer at the district court, right? We, we, we did. We tried to, we did for, for other reasons, but, but, but we lost. So we're not arguing estoppel, but what we're arguing is the, the Apple's indication of a disclaimer in the district court and also before the, before the board here is objective evidence that it viewed the disclaimer as unambiguous. I mean, there was no argument by, there was no argument by Apple that the disclaimer actually was, was not unambiguous, at least when, when Apple argued it before the board. So it's not the case of estoppel, but it is a case of where the court can look at the objective indicia for whether or not that disclaimer, in fact, demonstrates unambiguous disavowal of particular limitations. And it does with respect to the unambiguous disavowal. So assuming we agree with you and I know we've got to get to a lot of other things, but assuming we agree with you on that claim construction, what's your response to the argument that, that Apple makes that, that even if you need encryption, it's taught by best? Uh, you want it is not taught by Besser because, and we, and we, we present the document in the brief because Besser's, uh, first of all, Besser at many points discusses how encryption actually will lead to problems both with respect may aggravate hacking and more importantly may increase the computational burdens. The very essence, the very objective of Besser was to provide an alternative to encryption. So Besser system of communication is an alternative method of trying to ensure security when encryption is just not feasible. So the idea that the notion that Besser teaches encryption is antithetical to the design of Besser. And I think what the worst country conclusion is aggravated by the fact that as I mentioned, they did this claim, they did display many reliance on Apple on the evidence of Apple's expert. So at numerous occasion, the board actually began making assumptions what Besser implicitly or impliedly teaches or infers. So for instance, the opening brief we provided those examples at pages 33, 33, 34. And, um, there were numerous, there were numerous instances in the board decisions when it makes assumptions that they're not supported, including about whether or not Besser, Besser teaches away from encryption or not, that they're not supported by the, by the record. So one example I will give is on page 829, uh, the board said that Besser implies that it always encrypts, encrypts the public IP address for network device 16, but that's actually factual impossibility because once the, once the tunneling system is in Besser is established, the public addresses of device 16 will have to be exchanged. So Besser will not, it simply will not, will be impossible to encrypt particularly that, that particular IP address. And there were several other examples of where the board just makes, um, makes assumptions that the court instructed, uh, the board should not, should not do, particularly in the case of complex. You're not asking us to adopt a hard and fast rule that you have to have expert testimony on the record, are you? You are absolutely not. We, and we acknowledge that the risk, there is no per se rule based on this court precedent. But what this court said is particularly, this court openly said it will be a rare case where technology is so simple that the fact finder can understand the prior art without any benefit of expert evidence. Wait a minute. Wait a minute. You, you, you make that argument in your, in your blue brief, uh, at page 30, but, uh, in, at 47 in the, in the, in the, uh, appendix, uh, the board specifically relies on expert testimony. And specifically they say, as Dr. Montrose concedes, that's your expert and they're relying on it. So how can you say they're not relying on expert testimony? Your Honor, we actually, we, and, and, and, and I will have to look at that prior concession, but we did and we took an issue of the reply brief with the concessions that the board invoked. We don't think that actually... They're still relying on an expert. They're relying, but Your Honor, they're, first of all, they're relying, even, even if you agree that our expert made that concession, which we submit he did not, that was only one specific instance. And the board with respect to, with respect to numerous other findings, the board did not rely on any supporting expert evidence. So they may have mentioned in some points that they, they disagree with our experts, but they had no country evidence that actually supported their inferences from the prior art. So it is, so the board made, again, the issue for this court is not the personal rule, but the question is, is this technology so simple that the board, and did the board, in fact, just err by making this, by making unsupported assumptions without any benefit of evidence? Let's, let's, let's stay on that. You cite Brand for the proposition that it is impermissible for the PTAB to base its factual findings on its expertise rather than on evidence in the record. But you don't include us saying that the PTAB's, quote, expertise appropriately plays a role in interpreting record evidence. Your Honor, we, we acknowledge, we acknowledge actually that that there was a sentence in Brand and our reply brief quite openly. And we said, of course, the board has scientific expertise, but the question is here at the level of expertise and the parties, both parties agreed. I know you acknowledged it in your reply brief. It was mentioned in the red brief as well. But my point is, how can you fairly do that without mentioning the other part of the opinion? Your Honor, we, in all fairness, we, we quoted, we quoted from Brand the proposition that we thought was fair. We, and again, I think we were not trying to mislead the court because we openly acknowledge that we're not advocating for a per se rule. And of course the board has scientific expertise. I mean, that's, that's in the board statute. But our point is here, the court can just look at objective evidence. The Apple submitted over 400 pages of expert testimony when it, when it initiated the IPR proceeding, the board relied over 55 times, the board cited in the institution decisions, Mr. Fratto's expert declaration. And then in the final decision, the board turned around and said that actually they can make factual findings without benefit of expert evidence. So the board certainly has scientific expertise and in Belden, this court said where there is, there is a simple claim where there was a close, close piece of prior art, the board can just make its own findings. But I think here with this court looks at this particular technology and particularly prior art and the contentions that were raised by Apple, this is not the case where the, where the agency can make, can make its own findings without supporting expert evidence. And the danger is that that would actually undermine this court's review and function because this court, when it reviews an agency such as the board, particularly on the substantial evidence, it can look to see whether a particular conclusion of the board actually is, is supported by the expert evidence, whether the expert did make appropriate inferences from the record and whether the board relied and fairly considered the testimony of competing experts in, in contested proceedings such as this, where the board simply says, we're not going to rely on any support and any expert evidence that may potentially support petitioner. We just can make our own findings. There is no way for this court to effectively, we submit scrutinize, whether those findings, whether those findings were in fact correct, or at least we argue they're incorrect, but that's, it's going to, it's going to make the court's decision much more difficult. So, Yana, I also would like to... You're into your rebuttal time. Do you want to save it or do you want to... I just want to make one, one other point is we, you know, we also have an argument about the determining limitation, what the board was, was evident conflating what we, the two determinations. One is determination where the second network device is available for secure communication with very different determination, whether or not the first user, the first device actually has sufficient security privileges. So I'll be happy to answer questions about that, but otherwise I'll, I'll reserve my time for rebuttal. We'll save your time for rebuttal. Thank you, Yana. Thank you, Judge O'Malley. I'm going to get right to one of my questions. Yes, Judge Wallach. How did the EEITUT, the Electronic Engineers Telecommunication Standards, implicitly teach modulation? Judge Wallach, the, I think the point that the board was coming to on that issue was that Beezer specifically says that you can operate on networks using multiple industry standards, standards which include different modulation schemes, so that it was obvious to use Beezer with modulation. And you see the reference in Beezer at column four, 46 to 62. I'd also point out that this is an issue that Vernetics waived. They didn't raise this before the board. This is addressed in our brief at pages 63 to 66. And in light of the waiver, I think that this is an issue that the court doesn't have to get to. But I think what the board was doing was referencing the fact that Beezer specifically contemplates the use on multiple industry standards. So the other issues, of course, that are before the court are the claim construction issue. And I'd like to say a word about that at the beginning, because I think it's important for the court to recognize that whether you agree with Vernetics or not on the claim construction issue with respect to secure communication link, number one, the board found that there was encryption with Beezer. So that is satisfied either way. And second, that issue is not an issue with respect to the Weisinger reference for which there's no dispute. But you pretty much have to concede that they're correct on encryption, given the fact that you relied on the disclaimer successfully in district court and argued that it required encryption, right? Judge Malley, I think the record is actually far more complicated than that. For starters, this court on appeal made the point at page 1323 of the Cisco opinion, quote, but the patent consistently differentiates between security and encryption. And this court recognized that. But in that case, I mean, I think that it's somewhat a disingenuous reliance on that case because in that case, the communication link required encryption. There was a different question that the court was addressing at that point. But Judge O'Malley, on remand from this court, the construction that was used in subsequent proceedings does not require encryption. If you look at the September 24th, 2015 order in Eastern District of Texas case 12-855, that claim construction on remand from this court does not require encryption. Now to be sure, defendants had argued that they had, based on prosecution history, should be limited to encryption. This court has recognized, of course, that you can have arguments about claim construction based on the prosecution history that don't necessarily rise to the level of disclaimer. And of course, you're dealing with a different standard. I can't imagine a more clear disclaimer. Well, Judge O'Malley, if you look at what happened in that proceeding, and this gets exactly to the board's point about the fact that this was not a completed proceeding, the examiner in that proceeding ultimately rejected Vernadix's argument, found, and you can see this reference to page A436 of the record, the examiner found that the secure communication link did not require encryption. And so when you look at the record as a whole, yes, what they said certainly would have consequences under the Phillips standard. But does that mean that it is the kind of unequivocal disclaimer that this court requires in order to find that there's been a true disavowal? I don't know that you can say that. I think the record is ultimately ambiguous. But as I pointed out at the beginning, and I don't think this is disputed, this issue ultimately does not matter if you find that Beezer discloses encryption. And of course, the board, in fact, not only the board in this case, but the panel of the board in the third appeal that we're here today, and the examiner there as well, so six different members of the board and the examiner in the 181 proceeding, have all found that Beezer discloses encryption. And that's in fact, in the 181 proceeding, for example, the examiner there found the column two itself of Beezer suggests using encryption with the techniques that are disclosed in Beezer. Beezer's not teaching away from encryption. And that's, of course, another point here. You have the Beezer issue before the court, not just on anticipation in this proceeding, but also on obviousness. And the board found that it would be obvious to combine Beezer with the IPSEC protocol. The IPSEC protocol is, of course, specific. But that's a different question. And in that case, in this case, we don't have an obviousness finding. No, in this case, you do. In this case, all of the claims were found to be obvious over the combination of Beezer and IPSEC. In the third appeal, the board only reached the issues of anticipation. It did not address the other grounds on which the examiner had rejected the claims. In this case, you have both obviousness and anticipation. In fact, all of the, as I said, all of the claims were found to be obvious over Beezer and RFC 2401, which is IPSEC. And all the claims 2 and 24 were found to be anticipated by Beezer. You also have, of course, anticipation and obviousness over the Weisinger reference. And let me turn... Let's talk about the big issue, which is whether or not the board can do this without reliance on expert testimony. I mean, yes, we give the board credit for their expertise, but not to such an extent that there doesn't have to actually be evidence in the record. To be sure, Judge O'Malley, the question before the court is whether or not there's substantial evidence. And of course, the substantial evidence here is, number one, in the form of the references themselves, and number two, in the form of concessions from Vernetics' expert, which the board specifically relied on. You make a point of that, but really, there was only... It only went to one issue. There were two concessions that you cite. They were only in the 237 proceeding. I mean, you acted like the board kept referring to Vernetics' expert over and over and over and over. Not, you know, kind of like the 50-some times that they referred to your expert in the institution decision, but they didn't. It was really only on one small point in the 237 proceeding. So, Judge O'Malley, the board specifically referred to Vernetics' expert on the issue of teaching away. Teaching away. That's A46 to 47. On some other issues, the board found that Vernetics' expert was not credible. You can see that at A42. But what you have before the court, of course, are prior art references that are printed publications, indeed, patents, presumed to be enabling, which the board properly relied on. But the board made very specific factual findings about what they inherently teach, what they would suggest to one of skill in the art. They made all of these detailed findings about what one of skill in the art at the time would understand, and yet they didn't have anyone who they found to be of skill in the art to say those things. So, Judge O'Malley, first, I think if we look at the issues that were actually in dispute, that Vernetics actually points to, they're fairly narrow issues. They're not particularly complicated issues. They are issues like teaching away. They're issues like whether or not a person of ordinary skill in the art, somebody with a master's degree in computer science or electrical engineering, and a couple of years experience in the year 2000 would immediately envision a notebook computer when there's a reference to a computer. There was the question of whether or not the request to look up the IP address was disclosed in Beezer when the entire point of Beezer's system. They made factual findings on virtually every underlying factual question that's involved in an obviousness determination, or even an anticipation determination, what the prior art shows, what the prior art would teach, whether it taught away. They don't mention what the level of skill in the art is, but I guess their rejection of your expert who didn't rise to the level of skill in the art would be indicative that they understood it was pretty high. So, Judge O'Malley, a couple of points. First, I don't think there was ever any dispute about what the level of ordinary skill in the art was. The question was, did you actually have to have the academic credentials in order to show that you had the requisite level of experience? Second, the board did not, quote, reject our expert. I think that's a very important point to recognize. If you look at A55 and A92, what the board says is, we don't need to rely on Apple's expert. The board didn't make any findings that our expert was unqualified or was... They said it mooted it. It said it mooted the issue. Essentially, the board took the issue off the table. The board said, the issues that are before us, things like, would a notebook computer be immediately envisioned? Is there teaching away when on the face of the reference? Let me ask you this. At one point, the PTAB cites Apple's petition at J300-301 in support of its findings. But in that passage, Apple relies on Fratto. Is that a problem? I don't think so, Judge Wallach. I think that they are relying on our argument and reasoning, and that's exactly what this court recognized in Belden. But your argument and reasoning was based on Fratto. I mean, like it or not, you presented an expert that at least there was fair argument that he wasn't qualified. So, Judge O'Malley, I think this comes back to look at this court's decision in Belden and look at this court's decision in Perfect Web. There is not a single decision of this court saying that for purposes of deciding anticipation, and again, most of the claims here were found to have been anticipated. Did you have to have an expert to lead you by the nose on how to? They concede. They're not asking. They're not asking us for a determination that says you always have to have an expert. But in Brand, we said it would be the rare case where with complex technology, you could proceed without an expert. So what? First of all, Brand was not a case involving anticipation or obviousness. Brand was an interference where the question was derivation. And there were arguments being made about how about the drawings and whether or not what these drawings, whether they could have been combined and what they would have disclosed. They were not enabling prior art references. And in fact, this court made clear. But this is not an examination proceeding. This is an adversary proceeding with burdens of proof that are applicable. And Apple had the burden of proof. The board is supposed to be acting as a neutral arbiter, even if we defer to their expertise to a limited extent with things like application of common sense. How can we say that the board can reach conclusions with nothing but argument in front of it? Judge O'Malley, first, if I could finish the thought on Brand, this court there said that the board had done more than, quote, simply interpret the drawings from the standpoint of one of skill in the art. Strongly implying that if all that the board had done was interpret the drawings from the standpoint of a person of ordinary skill in the art, that would be fine. Belden says that is fine. Perfect Web says that that is fine. And that's what the board did here. It looked at the prior art references and in a very meticulous opinion, my colleague suggested that there was a danger. An opinion that virtually tracks Mr. Fredo's opinion. An opinion in which the board walks through the references, which is what Mr. Fredo had done. It makes Mr. Fredo's findings. In which Mr. Fredo had walked through the references and the board walks through the references, citing the references themselves. And the references, the question before the court is, is there substantial evidence? There's no requirement. There's no procedural issue. There's no issue with respect to having to have an expert. The question is, do you have substantial evidence? And in this court's decision in Belden, the court reversed a finding of the board of non-obviousness based on the references themselves. A very narrow question, though, in Belden. It was not a situation where there were repeated findings of fact. Well, Judge O'Malley, again, I think that you have a very narrow situation here when you drill down to where the actual disputes are. Vernetics makes this argument as though it were essentially a get out of jail free card, that you didn't have an expert. And so, therefore, the board is simply out freelancing. This isn't what the board is doing. The board is pointing to things specifically in the references. And you would have to go point by point, issue by contested issue, reference by reference to say, oh, there is there or is there not substantial evidence? Is this supported by those prior art references or not? And I haven't heard any argument about, for example, why the board's decision with respect to Weisinger are not supported by substantial evidence. We've heard an argument about whether or not it's, whether or not it is a proper construction of available to a construction argument that they actually waived in that proceeding. They didn't raise claim construction. You can see that at A-10-299. But there's no expert for Weisinger either, if we don't rely on Mr. Fredo. The board didn't rely on Apple's expert because it didn't find it necessary to. The board, in many ways, precisely because it is required by statute to have scientific training, is best positioned to know when it needs an expert or when it doesn't. And it's hard to understand when the board is typically going to need an expert for purposes of anticipation. I mean, this case doesn't present issues like, like, you have to back out calculations or you have to determine whether or not a chemical was necessarily present. There's not an enablement dispute here. I mean, what the board does is what this court does in case after case after case, in opinion after opinion, where it talks about the references and doesn't say a word about the expert, whether there's an expert or not. And I think that for this court to hold that an expert is required here would be a breathtaking proposition. And I think it would undermine the function that's done by examiners every day. You said this is an adversarial proceeding. That's true to a point. But this is different than what was at issue in Brand. What was at issue in Brand was, I said, a priority fight in which the public doesn't have an interest. What's at issue here is something in which the public strongly has an interest and in which the board proceeds even if parties drop out. Cuso itself, of course, went all the way to the Supreme Court without any party being on the other side. And so I don't think it's an answer to say that it's an adversarial proceeding. We're still talking, though, about a patent that was issued by the board and upon which businesses were built. And now we're trying to determine an adversarial proceeding if that patent is invalid. Well, I respectfully disagree with the notion that any businesses were built on any of the patents that are at issue here. But regardless of that, the question before the board and the burden of proof is exactly the same burden that an examiner has in any case that's an examination or an ex parte re-exam. It is the exact same burden of proof, that is, to prove that it is not patentable. No, the burden is not on the patent holder and there's no burden on the board. The burden's on Apple here. No, but my point, Judge O'Malley, is if you were in an ex parte re-exam, the burden that the examiner has to meet or to show in order to find that the patent is not patentable and cancel the claims is the same burden that is on Apple in this proceeding, which is by a preponderance of the evidence, was the subject matter not patentable? It's the exact same burden of proof. And I think if the court holds on this record where you have what are really very narrow issues, I mean, whatever you want to think about this technology in general, we can dispute whether or not it's complicated in general. The issues that the board had before it are narrow issues that are not particularly complicated. Is there a teaching away when, on the face of the patent, it specifically discloses the thing that frenetics argues is being taught away? Would you immediately? Your time is up. I'm sorry. Thank you, Your Honor. We'll add an extra minute to the rebuttal to make up for that. Do you see a distinction between the 237 proceeding and the 238 proceeding with respect to the kind of findings that the board made? Your Honor, the findings were different, but I think the same fundamental problem actually imperils both because the board was making assumptions about both Besser and Bessinger that were not supported by substantial evidence and not supported by any expert evidence. So, for instance, in our brief, on pages 33 and 34, we gave some examples such as an appendix 29 with respect to Besser, but we also gave an example of a board's determination of appendix 89 to 91 when the board determined what one of ordinary skills in the art would have understood in the cases of Wessinger. So I think if the court goes and looks at the board's actual findings as to both references, there will be the same lack of expert evidence. And to that central issue, Judge O'Malley, Apple now argues that the technology was not complex, that expert evidence was not required to understand it. As I mentioned, the board relied on Mr. Fratto's declaration over 55 times at the institutional proceedings. Apple itself, when it filed the petition, the IPR petitions, it introduced the prior art solely through the testimony of Mr. Fratto, not by references to the prior art itself. So this, again, is an indication, I think, an objective indication to the court that this is not the type, the example of simple references such as in Belden when the court said, this involves a very close piece of mechanical art and the issue is simple. This is a very different case. And I would emphasize that, Judge O'Malley, you said that it was Apple that had the burden of proof throughout this proceeding below. With respect to, I mean, with respect to the question that the board took simply the issue out of the picture, again, the board relied on Mr. Fratto at the institution repeatedly. And we, in our reply on page 3, note 1, we indicated numerous reasons why the expert was really not qualified and also why his impartiality was questioned. To address the question of encryption, this court has said many times it doesn't matter whether or not the examiner relied on a disclaimer. What matters is whether or not the disclaimer is unambiguous and how it was understood by others. With respect to the Phillips standard, obviously this court, after clause, applies a different standard to when reviewing IPR proceedings. But the question is still whether, even under the broadest reasonable interpretation, the claim construction is reasonable in light of the intrinsic record. And so this court looks still, even under BIR, at the prosecution history disclaimer. The standard doesn't somehow make this disclaimer more unambiguous than it would be under Phillips. With respect to the fact that under any claim construction of secure communication link, BASA just teaches encryption, that is not correct. And we have the argument why the theory solution, the theory design of BASA is to provide an alternative to encryption. And with respect to the argument that our expert, Mr. Monroe, has made any concessions, specifically on that point in our reply on page 20, we do actually demonstrate that the work was incorrect when it interpreted Mr. Monroe's admission that conceivably one could resolve the computational problems to say that, in fact, BASA teaches such a resolution. BASA designed the system because of the concerns about computational problems that encryption would cause. They misinterpreted his admission as a concession. That would be opposition, or at least it is opposition that is not a concession. You are there. I see my bundle 1065. Yes. Thank you. We'll move on to the next battle.